UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| DAVID HARVEY BAUMAN | § | |
| | § | |
| | § | |
| vs | § | CIVIL ACTION NO. M-04-145 |
| | § | |
| HIDALGO COUNTY, TEXAS, | § | |
| STARR COUNTY, TEXAS | § | |
| | § | |
| | § | |

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

Pending before the Court are Defendant Starr County's Motion to Dismiss (Doc. 47) and Defendant Hidalgo County's Motion to Dismiss. (Doc. 48). The Court having considered Defendants' respective motions and Plaintiff's response (Doc. 55,56) is now ready to rule on these motions.

### I.  BACKGROUND

On May 9, 2004, Plaintiff David Harvey Bauman ("Bauman") filed this action for damages pursuant to 42 U.S.C. § 1983.  (Doc. 1).  In his original complaint, Bauman alleged violations of his federal constitutional rights, including his First Amendment right to freedom of expression, his Fourth Amendment right to be free from unlawful seizure of his person, and his Fifth and Fourteenth Amendment rights to due process of law.  In addition, Bauman alleged violations of the laws of the State of Texas, including false arrest and imprisonment, malicious prosecution, abuse of process, negligence, and gross negligence.  *Id.*

On August 4, 2004, the Court issued an order "granting in part and denying in part Defendants' motions to dismiss and motions for a more definite statement."  (Doc. 45).  In that order, the Court dismissed all of Bauman's claims against the Texas Health and Human Services Commission, Texas Attorney General, Texas Department of Health and Human Services, and

United States Government. Though the Court denied Defendants Starr and Hidalgo Counties' motions to dismiss, the Court granted their respective motions for a more definite statement. (Docs. 42, 43). The Court held that Bauman's allegations against Starr County and Hidalgo County were so unclear as to deprive those Defendants of a meaningful opportunity to answer such allegations. (Doc. 45). Specifically, the Court directed Bauman to identify the specific actions by Starr County and/or by officials of Starr County that gave rise to each of the constitutional and statutory violations alleged and to specify the individual(s) who took part in his arrest in Hidalgo County and any actions by those individuals and/or Hidalgo County that gave rise to each of the constitutional and statutory violations alleged. *Id.* Furthermore, the Court directed Bauman to provide his amended pleading within 21 days. *Id.*

Instead of amending his complaint as the Court directed, Bauman instituted a new cause of action on August 17, 2004 against Starr County (04-CV-248). Bauman similarly instituted a new cause of action on August 17, 2004 against Hidalgo County (04-CV-247). On September 8, 2004, Defendant Starr County filed a motion to consolidate and a motion to dismiss. (Doc. 47). On September 9, 2004, Defendant Hidalgo County similarly filed a motion to consolidate and a motion to dismiss. (Doc. 48). On September 15, 2004, the Court consolidated 04-CV-248 into 04-CV-145. Similarly, on October 8, 2004, the Court consolidated 04-CV-247 into 04-CV-145. Taken together, Bauman makes the following allegations against Hidalgo and Starr Counties:

1. Juan Villescas ("Villescas"), the district attorney for Hidalgo County, indicted Plaintiff without probable cause, as the investigation of Plaintiff by auditors was initiated by a complaint from a single one of Plaintiff's former patients.

2. Villescas engaged in malicious prosecution and false indictment against Plaintiff by indicting Plaintiff on the following charges: 1) the waiver which Plaintiff had his patients sign constituted an illegal contract; and 2) medical fraud. Villescas soon dismissed these charges as they were demonstrably false.

3. Villescas displayed negligence by issuing indictments against Plaintiff on the presumption that Plaintiff had not provided counseling services in Hidalgo County and

had therefore defrauded Medicaid, whereas he could easily have contacted Plaintiff's former billing agent Frank Curry and Medicare and learned that Plaintiff was providing a legitimate counseling service and had the right to bill Medicaid for such a service. Moreover, Villescas could have easily contacted Plaintiff prior to any legal action and requested Plaintiff to send him copies of The Dietary Supplement Health Education Act of 1994, The Older American's Act, and the Washington D.C. Guidelines for the practice of Naturopathy, which affirm that the Plaintiff's practice of Naturopathy constitutes counseling and that Plaintiff has the right to use nutritional counseling and provide dietary supplements as part of a psychological service. Finally, Villescas could have learned that most Medicaid reimbursements to Plaintiff for counseling services he performed in Hidalgo County were in the form of Medicare co-payments which Medicare automatically assigns. Hence, most of the Medicaid reimbursements to Plaintiff for his work in Hidalgo County were not contingent upon any contracts with the National Heritage Insurance Company or the state of Texas, but with Medicare, which authorizes such co-payments. Bauman asserts that Villescas's negligence led to the arrest and indictment of Plaintiff on false charges.

4. Villescas engaged in malicious prosecution and false indictment of the Plaintiff by presenting one set of charges against Plaintiff to the grand jury under the guise of three separate counts. Villescas reworded the language of one count twice in order to create the impression to the grand jury that the Plaintiff had committed three separate sets of offenses when in fact the three counts describe one set of offenses. Each of the three counts against Plaintiff in Case No. 22-19-01-H states the following charges: 1) Plaintiff defrauded the National Heritage Insurance Company ("NHIC") by billing for services that were not provided to Medicaid patients; 2) Plaintiff knowingly caused NHIC to transfer funds affecting the pecuniary interest of NHIC; and 3) the money paid by NHIC to Plaintiff as result of his alleged deception was more than $20,000 but less than $100,000. Bauman asserts that, through this trickery of creating three redundant charges, Villescas was able to induce the Plaintiff to plead *nolo contendere* in exchange for the prosecution dismissing the other two cases.

5.  Villescas demonstrated negligence by his allegation in Count Two of Case No. 22-19-01-H, that Plaintiff "did intentionally, knowingly, and unlawfully appropriate, by acquiring and exercising control over the property of another: to-wit; money of the United States, by deception, namely by representing that services were provided to Medicaid patients when they were not in fact so provided." Plaintiff never acquired and exercised control over money of the United States by deception. Prior to performing any counseling services in Hidalgo County, Plaintiff and his billing agent, Frank Curry, had numerous conversations with Medicare representatives from Trailblazer Health Enterprises, LLC, which disperses Medicare funds in Texas. They approved Plaintiff's use of dietary supplements and nutritional counseling if the goal of such counseling was a psychological one. In effect, the United State government knew about Plaintiff's counseling practice and voiced no objections. Therefore, Villescas's charge is false. If he had discussed this issue with Plaintiff or his billing agent prior to any prosecution, he would have known enough to avoid making this and other spurious charges.

6.  Villescas displayed negligence by prosecuting Plaintiff based on an audit that exceeded the scope of its authority. The Plaintiff is a Medicare provider. Almost all of Plaintiff's billing in Hidalgo County were for counseling services for Medicare patients for whom Medicaid co-payments were automatically provided. Since the majority of the amount of Medicaid co-payments are funded by the federal government, state entities have little if any discretion in deciding who may or may not receive Medicaid co-payments. In any case, any allegation against Plaintiff should have been investigated by federal Medicare auditors, not state Medicaid auditors. Villescas could have easily learned of these issues by discussing them with Plaintiff or his billing agents before deciding to prosecute.

7.  Actions by the district attorney's office of Hidalgo County, along with contributing actions by the state of Texas and the Texas Attorney General's office, resulted in the Plaintiff being denied his constitutional right to a speedy trial. The Plaintiff was arrested in Hidalgo County on July 11, 2001. His trial was delayed until July 31, 2002.

8. Plaintiff's probation officer, Mr. Sanchez, violated Plaintiff's right to due process by forbidding Plaintiff to fly to Houston from the period of August 2002 to December 2002, citing as his reason the presence of a terrorist threat. Sanchez prevented transfer of Plaintiff's case to Harris County during the period of early November 2002 to mid-February 2003. Sanchez allowed the transfer of Plaintiff's case to Houston only because of the intervention of Plaintiff's attorney, George Young. Sanchez's actions caused Plaintiff humiliation, mental pain and suffering, and financial distress, and displayed discriminatory intent.

9. Though its actions, the district attorney's office of Hidalgo County violated the Dietary Supplement Education Act of 1994, the Older Americans Act, and the will of Medicare.

10. Hilda Garza ("Garza"), assistant district attorney for Starr County, indicted Plaintiff without probable cause, as investigation of Plaintiff by auditors was initiated by a complaint from a single one of Plaintiff's former patients, whose identity has never been revealed to Plaintiff.

11. Garza engaged in malicious prosecution by formulating charges against Plaintiff based on an audit by investigators from the Texas Attorney General's office and the Texas Department of Humans Services conducted two years after Plaintiff had performed counseling services in that county.

12. Garza displayed negligence by issuing indictments against Plaintiff on the presumption that Plaintiff had not provided counseling services in Starr County and had therefore defrauded Medicaid, whereas she could easily have contacted Plaintiff's former billing agent, Frank Curry, and Medicare, and learned that Plaintiff was providing legitimate counseling services and had the right to bill Medicare for such services. Moreover, she could have easily contacted Plaintiff prior to any legal action and requested that he send her copies of The Dietary Supplement Health Education Act of 1994, The Older American's Act, and the Washington D.C. Guidelines for the practice of

Naturopathy, which affirm that the Plaintiff's practice of Naturopathy constitutes counseling and that Plaintiff has the right to use nutritional counseling and provide dietary supplements as part of a psychological service. Finally, Garza would have learned that virtually all of the Medicaid reimbursements Plaintiff received for counseling services he performed in Starr County were in the form of Medicare co-payments which Medicare automatically assigns. Hence, most of the Medicaid co-payments to Plaintiff for his services in Starr County were not contingent upon any contracts with the National Heritage Insurance Company or the state of Texas, but with Medicare, which authorizes such co-payments. This led to the indictment and prosecution of Plaintiff on false charges.

13. Garza displayed negligence by prosecuting Plaintiff based on an audit that exceeded the scope of its authority. The Plaintiff is a Medicare provider. Virtually all of Plaintiff's billings in Starr County were for counseling services for Medicare patients for whom Medicaid co-payments are funded by the federal government; state entities have little if any discretion in deciding who may or may not receive Medicaid co-payments. In any case, any allegations against Plaintiff should have been investigated by federal Medicare auditors, not state Medicaid auditors. Garza could easily have learned of these issues by discussing them with Plaintiff or his billing agent before deciding to prosecute.

14. Garza engaged in malicious prosecution and false indictment by taking the indictment sheet of the grand jury and repeating it three times, creating three separate cases. Garza reworded the titles of the cases in order to create the impression that there were three separate cases when in fact the three titles referred to a single alleged offense. The stated offenses against Plaintiff were: 1) Medicaid Fraud (CAUSE No. 02-CR-22); 2) Securing and Executing a Document by Deception (CAUSE No. 02-CR-18); and 3) Theft (CAUSE No. 02-CR-20). A single set of charges were reworded to create the impression that Plaintiff committed three separate sets of offenses. Through this scheme of creating three redundant cases against Plaintiff, Garza was able to induce Plaintiff to plead *nolo contendere* to one case in exchange for the prosecution dismissing the other two cases.

15. Garza engaged in malicious prosecution as she relied upon evidence that was based upon the testimony of individuals who were mentally incompetent and who were questioned about events that happened at least two years prior to charges.

16. Garza, acting under color of authority, violated the Plaintiff's constitutional rights to a speedy trial. The Plaintiff was arraigned in late April of 2002 and did not go to trial until March 24 of 2003.

17. Through her acts, Garza violated the Dietary Supplement Education Act of 1994, the Older Americans Act, and the will of Medicare.

(Doc. 58 at 1-3; 04-CV-248, Doc. 1).

## II. ANALYSIS

In its October 8th, 2004 order, the Court ruled that it would treat Bauman's new complaint, 04-CV-248, as amending his original complaint, 04-CV-145, and that it would treat Bauman's 04-CV-247 complaint as a supplemental amendment. Bauman's new complaint, therefore, consists of his allegations in 04-CV-247 and 04-CV-248.

**Motions to Dismiss under Rule 12(b)(6)**

Hidalgo County and Starr County each file motions to dismiss under Rule 12(b)(6). Motions to dismiss for failure to state a claim are "viewed with disfavor and rarely granted." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). A district court must assume that all material facts in the plaintiff's complaint are true and should not dismiss the complaint "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* The district court should further evaluate "'whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf,

the complaint states any valid claim for relief.'" *Id*. Pro-se complaints are held to less stringent standards than formal pleadings drafted by lawyers. *Taylor v. Brooks A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). However, regardless of whether the plaintiff is pro se or is represented by counsel, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* at 378.

**County Liability and Official Immunity**

As a general rule, a local government may not be sued under §1983 for an injury inflicted solely by its employees or agents. A municipality may be liable under § 1983 only if three requirements are met. *Lawson v. Dallas County,* 2002 U.S. App. LEXIS 6543, *12 (5th Cir. 2002). First, the municipality must have "an official policy, practice, or custom" which could subject it to § 1983 liability. *Id.* citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690-91, 56 L.Ed. 2d 611, 98 S. Ct. 2018 (1978). Second, the official policy must be linked to the constitutional violation. *Id.* Finally, the official policy must reflect the municipality's deliberate indifference to the injury. *Id.*

Here, Bauman alleges that Hidalgo and Starr counties are liable for damages because of inappropriate action taken against him by various county employees and officials. As detailed *supra*, Bauman alleges false/negligent indictment, malicious prosecution, presenting false information to the jury, negligent fact gathering, denial of the right to speedy trial, denial of the right to travel, and violations of various medical statutes. (CV-04-247, Doc. 1; CV-04-248, Doc. 1). However, Bauman has not plead or alleged facts that any alleged constitutional violations were caused "by an official policy, custom, or practice" of either Hidalgo or Starr County, nor has Bauman alleged facts demonstrating the necessary connection of deliberate indifference. As such, Bauman has failed to state a claim for damages under §1983 against either Defendant. Plaintiff does not otherwise sue the alleged wrongdoers in their respective individual capacities. Accordingly, the Court is of the opinion that Defendants' respective motions to dismiss (Docs. 47, 48) should be **GRANTED**.

Even if Bauman were able to replead a policy, custom or practice along with the requisite

showing of deliberate indifference, Bauman would still have to demonstrate a causal nexus between the "official policy, custom, or practice" and a constitutional violation.  This of course presupposes a constitutional violation.  The Court notes that several of Bauman's claims are unrecognized and/or do not rise to the level of constitutional violations.[1]  The Court also notes that of those alleged constitutional violations of which are potentially actionable under §1983 at least one (malicious prosecution) is currently barred by the Heck doctrine.[2]

### III.  CONCLUSION

   Plaintiff Bauman sues Hidalgo and Starr Counties under § 1983 for false indictment, malicious prosecution, presenting false information to the jury, negligent fact gathering, denial of the right to speedy trial, denial of the right to travel, and violations of various medical statutes.  Bauman claims that he suffered damages based on the actions of several county employees and officials acting in their respective official capacity.  Bauman, however, fails to

---

1 False indictment is not an actionable claim under Texas law.  Nor can the Court find a  private right under the Dietary Supplement Health and Education Act of 1994 (DSHEA), the Older Americans Act (42 U.S.C. § 3001 et. seq.), or the "will of Medicare" given the facts alleged in this particular case.  While the Constitution does afford a person a constitutional right to a speedy trial, the remedy for a violation is dismissal of any criminal charges, not money damages.  See Midland Asphalt Corp. v. United States , 489 U.S. 794, 801, 103 L. Ed. 2d 879, 109 S. Ct. 1494 (1989)("Dismissal of the indictment [is] the proper remedy when the Sixth Amendment right to a speedy trial has been  violated....")(quoting United States v. MacDonald , 435 U.S. 850, 56 L. Ed. 2d 18, 98 S. Ct. 1547 (1978)).  A prosecutor in portraying information to a grand jury is afforded absolute prosecutorial immunity as a matter of law.  Rykers v. Alford,  832 F.2d 895 (5th Cir. 1987)(absolute immunity shelters prosecutors when they act maliciously, wantonly, or negligently); See also Imbler , 424 U.S. at 416.

2 In general, exhaustion of state remedies "is not a prerequisite to an action under § 1983."  Heck v. Humphrey , 512 U.S. 477, 129 L. Ed. 2d 383, 114 S. Ct. 2364 (1994).  However, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, § 2254.  Id. at 486-487.  A plaintiff who does not do so first has no cause of action under § 1983.  Id. at 489.  Since Heck, the Fifth Circuit has held that a criminal defendant may initiate a § 1983 suit if the state court has merely reversed the conviction. See Davis v. Zain , 79 F.3d 18 (5th Cir. 1996).  A threshold question for a Heck-type analysis is whether a successful § 1983 suit would necessarily imply the invalidity of a criminal conviction.  The Heck requirement "avoids parallel litigation over the issues of probable cause and guilt and it precludes the possibility of the claimant succeeding in a tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." Heck v. Humphrey , 512 U.S. at 484.  Bauman attempts to have his nolo contendere  plea expunged by this Court. (Doc. 60 which was stricken). However, this lawsuit is not the proper forum to address this request.

allege facts indicating that such wrongful acts were caused "by an official policy, custom, or practice."  In addition, Bauman fails to set forth the requisite connection of deliberate indifference.  The Court then, is of the opinion that Bauman has failed to state a claim for damages under § 1983 against said Defendants. Plaintiff does not otherwise sue the alleged wrongdoers in their respective individual capacities.  Defendants' Motions to Dismiss [12(b)(6)](Docs. 47, 48) are **GRANTED** in their entirety.  The Court, having disposed of all claims, is of the opinion that this case should be **DISMISSED**.  All other pending motions are **DISMISSED** (Doc. 59) as **MOOT**.

SO ORDERED this 6th day of July, 2005, at McAllen, Texas.

_____
Randy Crane
United States District Judge